<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WALTER HANKERSON,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | **Civil Action No. 13-6793 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the court is an appeal filed by Plaintiff Walter Hankerson seeking review of the Administrative Law Judge's final decision denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court has considered the submissions in support of and in opposition to the present appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, this Court affirms in part and remands in part the ALJ's decision.

**I.    Factual Background and Procedural History**

Walter Hankerson is a forty-four-year-old man with a history of respiratory and mental ailments. (*See* D.E. No. 7, Administrative Record ("Tr.") at 30, 60-82). Walter Hankerson first filed an application for SSI on February 16, 2010, alleging disability beginning on December 2, 2008. (*Id.* at 32, 60, 150). The Commissioner of Social Security denied Hankerson's claim on July 17, 2010, and again upon reconsideration on February 23, 2011. (Tr. at 83-87, 91-93). Hankerson requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

February 27, 2012 before ALJ Barbara Dunn. (Tr. at 26, 94-96). The ALJ issued a written decision on April 25, 2012, finding Hankerson not disabled. (Tr. at 13-20).

The ALJ determined that Hankerson had not engaged in substantial gainful activity as of his application date, February 16, 2010. (Tr. at 15). Based on the hearing and the record, the ALJ determined that Hankerson suffered from numerous health problems and had nine severe impairments, specifically: chronic obstructive pulmonary disease ("COPD"), asthma, depression, a history of substance abuse, borderline intellectual functioning, a history of alcohol dependence, status post left arm surgery for hardware removal, status post left humerus fracture, and left shoulder impingement. (*Id.*). However, the ALJ found that Hankerson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*).

Additionally, the ALJ found that Hankerson had the residual functional capacity ("RFC") to perform sedentary work and the ability to lift and carry up to ten pounds occasionally and less than ten pounds frequently with the use of his left, non-dominant arm. (Tr. at 17). The ALJ also found that Hankerson had the RFC to stand and/or walk for up to two hours in thirty-minute increments and to sit for at least six hours in an eight-hour workday. (*Id.*).

After considering Hankerson's age, education, work experience, and RFC and the testimony of a vocational expert, the ALJ determined that there were jobs in the national economy that a person similar to Hankerson would be able to perform, such as scaling machine operator, sorter, and weigher. (Tr. at 20). Thus, the ALJ concluded that Hankerson was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found that Hankerson was not disabled under the Social Security Act. (*Id.*).

Hankerson subsequently appealed the ALJ's decision, and the Appeals Council denied his request for review on September 5, 2013. (Tr. at 1-9). As a result, the decision of the ALJ became the final decision of the Commissioner. (Tr. at 1). On November 8, 2013, Hankerson commenced this action. (*See* D.E. No. 1, Complaint ("Compl.")).

## III. Legal Standards

### A. Standard for Awarding Benefits

An individual is "disabled" and therefore eligible for SSI "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The aggregate impairment must be severe to the point that the individual cannot "engage in any . . . kind of substantial gainful work which exists in the national economy . . . [i.e.] work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 1382c(a)(3)(B).

To determine whether an individual has a disability for the purposes of SSI benefits, the Commissioner uses a sequential, five-step analysis. 20 C.F.R. § 416.920(a)(4). First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. *Id*. § 416.920(a)(4)(i), (b). "Substantial gainful activity is work activity that involves doing significant physical or mental activities" that are "usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(a)-(b). Second, a claimant must have a medically determinable impairment, or combination of impairments, severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id*. § 416.920(a)(4)(ii), (c); *id.* § 416.909. Third, the impairment(s) must meet or equal a listing in

Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id*. § 416.920(a)(4)(iii), (d). An impairment or combination of impairments "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a). If a claimant meets his or her burden during the first three steps, the claimant is deemed disabled and the Commissioner's review stops. *Id.* § 416.920(a)(4).

However, if a claimant meets his or her burden on the first two steps, but fails on the third, the analysis proceeds to the fourth step and the Commissioner evaluates the claimant's RFC. *Id.* § 416.920(a)(4)(iv), (e). RFC is "the most [the claimant] can still do despite [his or her] limitations," including non-severe limitations. *Id.* § 416.945(a)(1)-(2). At step four, a claimant must demonstrate that he or she cannot perform "past relevant work" in light of his or her RFC. *Id.* § 416.920(a)(4)(iv), (f). "Past relevant work" is defined as work the claimant has "done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). If the claimant is deemed incapable of performing his or her past relevant work, the analysis proceeds to the fifth and final step. In order to be deemed disabled at step five, the claimant must be unable to adjust to other work in light of his or her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g). Before denying a claim at the fifth step, the Commissioner must provide evidence that such other work "exists in significant numbers in the national economy that [the claimant] can do." *Id.* § 416.960(c)(2).

The claimant bears the burden of proof for the first four steps of the analysis. *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The burden then shifts to the Commissioner for the fifth step. *Id.*; *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step) (internal quotation marks omitted)).

### B. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by "substantial evidence." 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla . . . but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

"[T]he substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### IV. Analysis

On appeal, Hankerson argues that substantial evidence existed in the administrative record to support a finding of disability. (D.E. No. 10, Brief in Support of Plaintiff ("Pl. Br.") at 1). Therefore, Hankerson asks the Court to reverse the Commissioner's final administrative decision or, alternatively, vacate and remand the claim back to the Commissioner for reconsideration. (*Id.*). Hankerson presents three arguments for review, namely that: (1) the ALJ erred at step three by failing to conduct a medical equivalence analysis of his impairments and failing to consider his impairments in combination, (*id.* at 14-15, 20-25); (2) the ALJ erred at step four because her RFC assessment was not supported by substantial evidence and not reflective of Hankerson's left arm (and shoulder), mental, and breathing limitations, (*id.* at 25-30); and (3) the ALJ erred at step five

because her hypothetical questioning of the vocational expert did not convey all of Hankerson's credibly established mental limitations, (*id.* at 30-35).

With respect to his first argument, Hankerson contends that the ALJ failed to consider at step three whether each of his individual impairments was medically equivalent to a listed impairment and improperly analyzed his various impairments. (*Id.* at 10, 22-25). Hankerson further argues that the ALJ's step-three analysis was deficient because the ALJ did not consider whether his impairments in combination medically equaled a listed impairment. (*Id.* at 24-25). The Court addresses each alleged deficiency in turn.

### A. Hankerson's Individual Impairments

The Court finds that the ALJ adequately analyzed whether Hankerson's individual impairments met or medically equaled the relevant listings and that the ALJ's determinations in this regard are supported by substantial evidence. "[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements." *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008). While part of the ALJ's discussion regarding Hankerson's individual impairments is included in her step-four RFC analysis, this fact does not change the sufficiency of the ALJ's step-three analysis. *See Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007) (holding that ALJ's discussion of medical evidence in the RFC analysis did not warrant remand on step-three analysis).

Hankerson argues that the ALJ inappropriately compared his fractured left humurus to listing 1.02 and should have instead analyzed whether his fractured left humerus met or medically equaled listing 1.07 (fracture of an upper extremity). (Pl. Br. at 22). Listing 1.07 requires "nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical

6

management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.07. The phrase "under continuing surgical management," as used in listing 1.07, refers to surgical procedures and any other associated treatments related to the efforts to salvage or restore the functional use of the affected part. 20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.00M. Here, the ALJ expressly addressed Hankerson's status post left arm surgery for hardware removal, status post left humerus fracture, and left shoulder impingement by noting all of the relevant exhibits in the record, namely Exhibits 6F (a negative MRI lumbar spine), 18F (a January 2012 prescription and left arm therapy notes), and 19F (pharmacy prescription records). (Tr. at 19). Those records do not demonstrate that these impairments were severe enough to meet or equal listing 1.07. Based on the Court's review of the record, substantial evidence supports the ALJ's finding that Hankerson's fractured left humurus did not meet or medically equal a listed impairment.

Hankerson also argues that the ALJ failed to consider whether his pulmonary diseases were medically equivalent to listings 3.02 (COPD) and 3.03 (asthma), though he acknowledges that "references were made to the elements of those listings." (Pl. Br. at 23). The Court finds that the ALJ adequately addressed Hankerson's pulmonary impairments and determined that they did not meet or medically equal those listings. The ALJ specifically stated that "[p]articular scrutiny was given" to Hankerson's condition in light of Listing 3.00 and explained that "[t]here is no evidence of the frequency of asthma exacerbation required by the listing," his "X-rays were consistently negative," and his "pulmonary function tests [were] indicative of only moderate restriction." (Tr. at 15-16). In reaching this decision, the ALJ made note of Hankerson's pulmonary function tests ("PFTs") indicating that he had moderate restrictive lung disease, as well as his negative CT chest

7

scan and normal chest x-rays. (*Id.* at 18).  The ALJ also noted that a "pulmonary evaluation conducted by treating physician Dr. Elamir in April 2010 was normal" and that "no additional testing or changes in treatment was felt necessary." (*Id.*).  Although the ALJ did not specifically mention listings 3.02 and 3.03, it is clear from her discussion of the record that she considered these listings in analyzing whether Hankerson's respiratory symptoms met or medically equaled a listing.  *See Johnson ex rel. Johnson v. Comm'r of Soc. Sec.*, No. 08-04752, 2009 WL 4911943, at *10 (D.N.J. Dec. 11, 2009) ("Although the ALJ did not specifically mention a certain Listing, his consideration of the record illustrates analysis of Claimant's impairments in light of the Listings."). Having reviewed the record, the Court further finds that the ALJ's determination with respect to Hankerson's respiratory ailments is supported by substantial evidence.

Finally, Hankerson asserts that the ALJ improperly evaluated his mental impairments because she never examined the Paragraph A criteria under listings 12.02 (organic mental disorders) and 12.04 (affective disorders) when considering whether his mental impairments met or medically equaled those listings. (Pl. Br. at 23-25).  For both listings 12.02 and 12.04, "[t]he required level of severity for these disorders is met when the requirements in both [Paragraphs] A and B are satisfied, or when the requirements in [Paragraph C] are satisfied." 20 C.F.R. Pt. 404, subpt. P, App. 1, §§ 12.02, 12.04.  Because the ALJ determined that Plaintiff failed to satisfy the Paragraph B criteria, it was unnecessary for the ALJ to analyze whether Plaintiff nonetheless met the Paragraph A criteria for listings 12.02 and 12.04.

Additionally, the Court finds that the ALJ properly analyzed the Paragraph B criteria and sufficiently explained her reasoning when determining that Hankerson's mental impairments, considered singly or in combination, did not meet this criteria.  Paragraph B for listings 12.02 and 12.04 requires that a claimant's impairments result in at least two of the following: (1) marked

restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[1]  *Id.*  A "marked" restriction or difficulty is one that is "more than moderate but less than extreme" and that "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(C).

The ALJ determined that Hankerson did not satisfy the paragraph B criteria because his mental impairments did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (Tr. at 16). Specifically, the ALJ found that Hankerson had a moderate restriction in activities of daily living; moderate difficulties in maintaining concentration, persistence, or pace; mild difficulties in social functioning; and a lack of repeated episodes of decompensation. (*Id.*). In assessing Hankerson's mental impairments, the ALJ noted, among other things, the lack of records from a treating psychiatrist; the claimant's own comments during his consultative examination that he was stable, traveled by bus, and had friends with whom he socialized; and the fact that a consultative examiner gave Hankerson a global assessment of functioning score of 60, which indicated that he had mild to moderate symptoms. (Tr. at 16, 19). The Court finds that the ALJ clearly analyzed and evaluated the relevant medical evidence as it related to listings 12.02 and 12.04 and that substantial evidence supports the ALJ's determination that Hankerson did not satisfy the Paragraph B criteria.

---

[1] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." *Id.* § 12.00(C)(4).  They "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system." *Id.*  "The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

For the reasons set forth above, the Court affirms the ALJ's determination that Hankerson's individual impairments did not meet or medically equal a listing. The Court also affirms the ALJ's determination that Hankerson's mental impairments, considered in combination, did not meet or medically equal a listing, as the ALJ sufficiently addressed Hankerson's failure to meet the paragraph B criteria of listings 12.02 and 12.04 and her determination was supported by substantial evidence.

### B. Hankerson's Combined Impairments

Next, the Court considers whether the ALJ properly evaluated all of Hankerson's impairments in combination at step three. Hankerson argues that the ALJ "haphazardly [threw] together a series of partial findings" instead of conducting a proper combination analysis. (Pl. Br. at 22). Indeed, the extent of the ALJ's combination analysis was the ALJ's statement that "[t]he claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. at 15). While the ALJ adequately reviewed each of Hankerson's impairments individually, this statement regarding Hankerson's impairments in combination is overly broad and too generalized. *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) (holding that "[c]onclusory statements, like the one in this case, have been found to be 'beyond meaningful judicial review'" and remanding because the "entire combination analysis consisted of one cursory paragraph"); *Butler v. Astrue*, No. 09-3252, 2010 WL 3908627, at *7 (D.N.J. Sept. 28, 2010) ("Without any explanation as to how all of Plaintiff's documented impairments in combination affect his ability to work, the Court cannot determine whether the ALJ's Step Three determination is correct."); *cf. Perez v. Astrue*, No. 2:09-1504, 2009 WL 4796738, at *2 (D.N.J. Dec. 9, 2009)

10

(declining to remand for combination analysis where there was only one severe impairment and therefore there was "nothing for the ALJ to combine in any combination analysis").

In this case, the ALJ found nine severe impairments at step two. (Tr. at 15). The ALJ's blanket statement that the combination of these impairments does not medically equal any listed impairments is insufficient. Without a more detailed explanation of the reasons and facts underlying the ALJ's conclusion, the Court lacks a reasonable basis upon which to review this conclusion. *See Jones v. Astrue*, No. 11-4379, 2012 WL 5451528, at *6 (D.N.J. Nov. 5, 2012) ("Without a more detailed explanation or analysis as to the reasons and facts underlying her conclusion, this Court has no reasonable basis upon which to conduct a reasonable judicial review of said conclusion."); *see also Elliot v. Astrue*, No. 11-2293, 2012 WL 2870912, at *7 (D.N.J. July 12, 2012) ("The ALJ's failure to provide more than a conclusory statement when tasked with combining and comparing Plaintiff's recognized impairments to the Listings precludes meaningful judicial review."). Thus, the Court remands the case for a detailed step-three analysis that considers whether Hankerson's impairments in combination are or are not equivalent in severity to a listed impairment.

Because the ALJ's step-three analysis could obviate the need to evaluate Hankerson's impairments at steps four and five or otherwise affect these final steps, the Court does not address Hankerson's remaining challenges to the ALJ's analysis. *See Jones*, 2012 WL 5451528, at *6 ("Because the ALJ's reassessment at Step Three could affect and/or obviate the need to evaluate Plaintiff's impairments at Steps Four and Five, the Court declines to address issues concerning Steps Four and Five at this time."); *Butler*, 2010 WL 3908627, at *7 ("[B]ecause the analysis of a disability application is a sequential process, and the analysis has stalled at Step Three, the Court cannot determine whether the ALJ was correct in assessing the fourth and fifth steps, or whether

the ALJ's ultimate conclusion that Plaintiff is not totally disabled is supported by substantial evidence."); *see also id.* ("[A] proper explanation as to why Plaintiff does not have a Step Three impairment or combination of impairments could mostly likely also affect the analysis of the other two sequential steps."). Accordingly, the Court remands the case so that the Commissioner can complete the step-three analysis.

**V.     Conclusion**

For the reasons discussed above, the Court affirms the ALJ's analysis of Hankerson's individual impairments and the ALJ's analysis of his mental impairments in combination. However, the Court remands the ALJ's decision for further administrative proceedings addressing whether the combination of Hankerson's impairments is medically equal to any listed impairment. Thus, the Court affirms in part and remands in part the ALJ's decision.

                                                                *s/ Esther Salas*
                                                                **Esther Salas, U.S.D.J.**